ALTENBERND, Judge.
Mark Linn appeals an order involuntarily placing him in a mental health treatment facility. This order is a commitment order entered by the probate court. The probate court entered this order shortly after another circuit court judge dismissed a criminal case against Mr. Linn that had been pending for five years. The judge in the criminal court case had committed Mr. Linn to the Department of Children and Family Services for involuntary hospitalization under Florida Rule of Criminal Procedure 3.213(b). The broader issue presented by this case is what, if any, additional evidentiary hearing is required in the probate court following such a dismissal and commitment. Unfortunately, our record does not contain sufficient information for this court confidently to reach a legal resolution of this broader issue. On the record before us, we con-elude that the probate court’s order is based on incorrect legal reasoning. We reverse and remand for the probate court to reconsider its order.[1]
In early 2004, the State charged Mr. Linn with throwing a deadly missile at or into a building. See § 790.19, Fla. Stat. (2003).[2] In August 2004, the criminal court determined that he was incompetent to proceed and committed him to DCF until his competency could be restored to the level that would permit a trial. From our limited record, it is apparent that Mr. Linn was evaluated by at least three qualified experts at that time and that two of them opined that he was incompetent to proceed. The State placed Mr. Linn in the North Florida Evaluation and Treatment Center.
Mr. Linn’s competency was not restored during the following five years. In August 2009, his attorney filed a motion to dismiss under rule 3.213(b), which states, in pertinent part:
If at any time after 5 years following a determination that a person is incompetent to stand trial ... when charged with a felony, ... the court, after hearing, determines that the defendant remains incompetent to stand trial ..., that there is no substantial probability that the defendant will become mentally competent to stand trial ... in the foreseeable future, and that the defendant does meet the criteria for commitment, the court shall dismiss the charges against the defendant and commit the *785 defendant to the Department of Children and Family Services for involuntary hospitalization or residential services solely under the provisions of law.... In the order of commitment, the judge shall order that the administrator of the facility notify the state attorney of the committing circuit no less than 30 days prior to the anticipated date of release of the defendant. If charges are dismissed pursuant to this subdivision, the dismissal shall be without prejudice to the state to refile the charges should the defendant be declared competent to proceed in the future.
Fla. R.Crim. P. 3.213(b)(1). The court in the criminal case held a hearing on the motion on August 27, 2009. The transcript of that hearing reflects that it was perfunctory and that the State had no objection to the motion. The trial court immediately entered an order dismissing the criminal proceeding and transferring Mr. Linn to DCF for further proceedings in accordance with chapter 394, Florida Statutes (2009).
As a result of the order in the criminal proceeding, Mr. Linn was transferred to a mental health facility in Pinellas County. Mr. Linn was admitted to the facility as a voluntary patient, which appears to have been an oversight because section 394.4625(l)(d) prohibited his admission as a voluntary patient. A few days later, the administrator of that facility filed a petition for involuntary placement. The matter was immediately referred to a general magistrate for a hearing under section 394.467. This hearing is commonly referred to as a Baker Act hearing.
At the beginning of the hearing, the parties disagreed on the scope of the hearing. The State took the position that the order dismissing the criminal proceeding had specifically found that Mr. Linn met the criteria for commitment under the Baker Act and that this order was binding on the magistrate. Mr. Linn’s attorney maintained that Mr. Linn was entitled to receive a completely new involuntary commitment hearing. The attorneys provided no legal authority, and the issue does not appear to have a clear answer in the law.
The magistrate prudently did not accept the State’s position at the beginning of this hearing. She conducted an evidentiary hearing and considered the testimony of five witnesses, including Mr. Linn’s then-current treating physician who advocated for his continued commitment. Thereafter, the magistrate prepared a typical report and recommendation. Although the magistrate relied on the treating physician’s testimony to determine that Mr. Linn was not competent and that his status as a voluntary patient was incorrect, the magistrate decided that the order entered by the criminal court a month earlier was dispositive of Mr. Linn’s need for civil commitment. The probate court entered an order adopting the magistrate’s findings and recommendations. It expressly concluded that the criminal court order was a valid and enforceable placement order for purposes of chapter 394. Mr. Linn appealed.
On appeal, Mr. Linn argues that revers-. ible error occurred because he was involuntarily committed under the Baker Act based on the criminal court’s August 2009 order, which was entered, in essence, on a stipulated order of dismissal. The State makes two arguments in response.
First, the State argues that the order from the criminal court must be given collateral estoppel effect. At least in the context of this case, we are unconvinced that the order entered by the criminal court in August bound the probate court in September. The one-page transcript of the hearing on the motion to dismiss the criminal charge demonstrates that no evi- *786 denee was taken or considered by the court. It merely noted that the motion had been filed by Mr. Linn’s attorney. When the assistant state attorney began to announce that the State had no objection to the motion, the court granted the motion before the attorney could even complete the sentence containing this concession.
In the context of the criminal proceeding, the defense attorney’s primary job was to obtain a dismissal of the criminal charge. Mr. Linn had already been committed for a period that was likely longer than the sentence he would have received if he had gone to trial and been found guilty. Mr. Linn’s attorney was not representing him in any civil proceeding, and nothing in the record would suggest that Mr. Linn should be bound by any determination of his mental status as a result of a hearing at which everyone stipulated to a dismissal of the criminal proceeding. Mr. Linn’s right to due process as to his fundamental liberty interest for involuntary commitment under the Baker Act would seem to require more process than occurred at the hearing on the motion to dismiss the criminal charge.
Second, the State argues that under section 916.16, Florida Statutes (2009), only the criminal court has jurisdiction over this commitment. That section states, in part:
The committing court shall retain jurisdiction over any defendant involuntarily committed due to a determination of incompetency to proceed due to mental illness or a finding of not guilty by reason of insanity pursuant to this chapter. The defendant may not be released except by order of the committing court.
§ 916.16(1). If this argument is valid, neither the magistrate nor the probate court had any authority to address the issue of Mr. Linn’s need for involuntary commitment. We conclude that the State reads too much into this statute. We see no reason to interpret this statute as giving exclusive jurisdiction over this commitment to a judge who has already entered an order dismissing the proceedings over which he or she had jurisdiction.
Although it was not argued by the State, this court has considered an alternative basis for affirming the probate court. We suspected that the 2004 hearing at which Mr. Linn was committed under Florida Rule of Criminal Procedure 3.212(c) might be the legal equivalent of a Baker Act hearing under section 394.467. A commitment under rule 3.212 results in a six-month review process to assure that the defendant is not involuntarily committed beyond the period in which such commitment is psychologically and legally justified. This safeguard procedure is very similar to the review process mandated by section 394.467(6)-(7). It occurred to this court that the order entered at the conclusion of the criminal case was based on a proper competency determination in 2004 and that the effect of the transfer was simply to shift the safeguard procedures from those in rule 3.212 to the similar procedures in section 394.467. In other words, the order of commitment from 2004 might be binding in the new civil proceeding under chapter 394 even if the order entered in August 2009 were not binding.
We thus entered an order explaining our interest in this alternative theory and asking the parties to supplement the record with the missing documents from 2004 in the criminal proceeding. Although we have received some additional records from 2004, we are not convinced that these records permit this court to affirm, as a matter of law, on an alternative theory. See Butler v. Yusem, 44 So.3d 102, 105 (Fla.2010).
*787 Accordingly, at least in the context of this case, we hold that the probate court erred in concluding that the dismissal order entered by the criminal court in August 2009 was dispositive of Mr. Linn’s need for civil commitment. We reverse the order of involuntary commitment and remand for further proceedings consistent with this opinion.
Reversed and remanded.
VILLANTI and CRENSHAW, JJ„ Concur.

. Our record suggests that Mr. Linn was released from commitment during the pendency of the appeal and that this case may have become moot. This error is obviously capable of repetition. We have written this opinion, in part, to give guidance to the probate court as to a method that may help resolve the legal question. If this case is moot and further proceedings are not necessary to protect the interests of Mr. Linn on remand, the probate court is not required to take further action.

. Nothing contained in our record reflects the precise date the offense occurred. We have cited the 2003 statutes because the dates of events suggest that the offense was likely committed at a time when the 2003 statutes were in effect, but our citation is by no means definitive.